**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

MICHAEL J. HUMMEL, )
      Plaintiff, )
  v. )
                                    Case No.: 6:11-cv-12
DAVID W. HALL, t/a )
COUNTRY MOTOR SALES, )
      Defendant. )

## BRIEF IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

Plaintiff seeks the entry of a default judgment in the amount of five thousand seventy dollars and twenty three cents ($5070.23), of which Mr. Hummel seeks $2000 for violations of the Truth in Lending Act ("TILA") and $3070.23 for violations of Virginia's usury law. The scope of the brief is limited to the effective date of the increase in civil liability in the TILA, from $1000 to $2000, as amended in the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"). Congress passed the Dodd-Frank Act to institute broad changes to practices in insurance, securities, lending, investing, mortgages and also to establish the Bureau of Consumer Financial Protection for centralized oversight of consumer law and regulation. The Dodd-Frank Act consists of sixteen separate titles. The issue before this Court is a question of first impression that, to counsel's knowledge, has not been addressed by Courts in this Circuit.[1]

### Question Presented

Whether the increase of Truth in Lending civil liability from $1000 to $2000 as found in the Dodd-Frank Act, Title XIV, Section 1416, took effect on the primary effective date of July 22, 2010.

---

[1] There are several unpublished decisions from other district courts that have discussed a related question. These cases are explained and addressed *infra*.

1

## FACTS

This case originated with an automobile sale to Mr. Hummel in September of 2010. On September 6, 2010, Mr. Hummel went to look at a 1992 Honda Accord VIN 1HGCB7652NL001838 ("the vehicle") that was located at Defendant's home. At that time, Mr. Hummel signed some DMV documents and took possession of the vehicle. On September 10, 2010, he signed a buyer's order at the dealership location. He did not sign a security instrument, retail installment sale contract or other like documents. He was not provided with the disclosure of any terms of financing or any interest rate that would be imposed. After inquiring about the high amount of his balance, Mr. Hummel discovered that there was an interest rate of 28% being applied to his account.

Plaintiff filed the complaint and process was personally served on Defendant July 6, 2011, yet Defendant has failed to answer or plead. A default was entered in this case by the clerk on August 31, 2011.

## ARGUMENT

### The Truth in Lending Act Increase in Civil Liability Took Effect July 22, 2010

**A.   Section 4 of the Dodd-Frank Act Sets Forth a Clear and Unambiguous Effective Date of July 22, 2010 for all Titles and the Plain Language of a Delayed Effective Date in Section 1400(c) is not Applicable to the Increase of TILA Civil Liability**

The Dodd-Frank Act in Section 4 states:

*Except as otherwise specifically provided* in this Act or the amendments made by this Act, this Act and such amendments *shall take effect* 1 day after the date of enactment of this Act.

Dodd-Frank, Pub. L. No. 111-203, § 4, 124 Stat. 1376, 1390 (2010) (emphasis added). The President signed, and therefore enacted, the Dodd-Frank Act on July 21, 2010. See *Remarks on Signing the Dodd-Frank Wall Street Reform and Consumer Protection Act*, July 21, 2010, Daily Comp. Pres. Docs. 2010 DCPD No. 00617, p.1, *available at*, http://www.gpo.gov/fdsys/pkg/DCPD-

201000617/pdf/DCPD-201000617.pdf (last visited December 13, 2011). According to the terms of Section 4, the effective date for the Dodd-Frank Act is July 22, 2010.

In order to determine the effective date of the increase in civil liability found in Section 1416 of Title XIV, the Court must engage in statutory interpretation of the pertinent sections of the Dodd-Frank Act. When interpreting a statute, the Court starts with the plain language and will enforce it according to its terms. Stephens v. Astrue, 565 F.3d 131, 137 (4th Cir. 2009). The Court gives the "terms their ordinary, contemporary, common meaning, absent an indication Congress intended [it] to bear some different import." Id. (internal citations omitted). Congress provided unambiguous, mandatory language in Section 4 that states "this Act and such amendments shall take effect 1 day after the date of enactment." Dodd-Frank, Pub. L. No. 111-203, § 4, 124 Stat. 1376, 1390 (2010) (emphasis added). Section 4 sets July 22, 2010 as the general effective date for all sixteen Titles within the Dodd-Frank Act. Id. Section 1416 increases the civil liability for TILA violations and is part of "this Act" and found in Title XIV. Id.; Dodd-Frank, Pub. L. No. 111-203, § 1416, 124 Stat. 1376, 2153 (2010).

Pursuant to the plain terms of Section 4 of the Dodd-Frank Act, the effective date for the TILA amendments is July 22, 2010. The use of a different effective date is permitted only if it is "otherwise specifically provided." Dodd-Frank, Pub. L. No. 111-203, § 4, 124 Stat. 1376, 1390 (2010). The term "specific" means "relating to, or designating a particular or defined thing; explicit." Black's Law Dictionary 1406 (7th ed. 1999). The only possible exception to the July 22, 2010 effective date set forth in Section 4 is Section 1400(c)(3) of Title XIV of the Dodd-Frank Act. The plain language of Section 1400(c) must be analyzed to determine if it designates or defines explicitly an effective date for the increase in TILA civil liability other than July 22, 2010. Section 1400 of the Dodd-Frank Act, in relevant part, states:

(c) REGULATIONS; EFFECTIVE DATE.

3

>    (1) REGULATIONS.-The regulations required to be prescribed under this title or the amendments made by this title shall-
>
>       (A) be prescribed in final form before the end of the 18-month period beginning on the designated transfer date; and
>
>       (B) take effect not later than 12 months after the date of issuance of the regulations in final form.
>
>    (2) EFFECTIVE DATE ESTABLISHED BY RULE.-Except as provided in paragraph (3), a section, or provision thereof, of this title shall take effect on the date on which the final regulations implementing such section, or provision, take effect.
>
>    (3) EFFECTIVE DATE.-<u>A section of this title for which regulations have not been issued on the date that is 18 months after the designated transfer date shall take effect on such date</u>.[2]

Dodd-Frank, Pub. L. No. 111-203, § 1400(c), 124 Stat. 1376, 2136 (2010) (emphasis added).

A Court must give effect to every clause and avoid a construction that renders any statutory language superfluous. <u>Astoria Fed. Sav. & Loan Ass'n v. Solimino</u>, 501 U.S. 104, 112 (1991); <u>U.S. v. Menasche</u>, 348 U.S. 528, 538-39 (1955) (holding the "cardinal principle" of statutory interpretation is to "save and not destroy" and to give effect to every clause and word of a statute). Subsection (c)(3) provides a delayed effective date of January 22, 2013 for "sections of this title for which regulations have not been issued." In order to give effect to the language, the effective date applies only to the sections with explicit authority to issue regulations but within a specified time the agency failed to exercise the authority.

Congress included the phrase in Section 1400(c)(3) "for which regulations have not been issued" to modify and constrain the scope of the initial phrase "[a] section of this title." Since Congress included a phrase to modify which sections are affected, it follows that the delayed effective date of Section 1400(c) cannot apply to all sections in Title XIV. On the contrary, if

---

[2] The designated transfer date is July 22, 2011.  Dodd-Frank, Pub. L. No. 111-203, §§ 2(17), 311(a), 124 Stat. 1376 (2010) (setting forth the designated transfer date as 1 year after enactment); <u>see also</u> Bureau of Consumer Financial Protection, Designated Transfer Date, 75 Fed. Reg. 57252 (Sept. 20, 2010).  This renders the delayed effective date in Section 1400(c)(3) to be January 22, 2013.

Congress intended that the delayed effective date apply to all sections of Title XIV, it would have simply stated "a section of this title shall take effect 18 months after the transfer date" instead of using unnecessary language. The language of Section 1400(c)(3) provides the effective date for a section of Title XIV, if and only if, the issuance of regulations has not occurred within the specified time period. The expectation of issuing regulations necessarily implies that there was authority in the section to issue regulations prior to the expiration of that period. To apply the delayed effective date to all sections in Title XIV renders the phrase "for which regulations have not been issued" superfluous, as no constraint or modification of the words "section of this title" would be needed. A delay meant solely to allow time for regulations to be issued, but that the agency lacks authority to issue, would cause a patently preposterous result.

A statute should be interpreted in a manner "most compatible with the surrounding body of law into which the provision must be integrated." Green v. Bock, 490 U.S. 504, 528 (1989) (Scalia, J. concurring). Section 1400(c)(1)-(3) has a natural progression of the chronology for issuing regulations under certain sections and the corresponding effective dates of those sections. The terms and structure of Section 1400(c) limit the delayed effective date only to the sections within Title XIV that require regulations to be prescribed. Subsection (c)(1) begins with directives as to when "regulations **required** to be prescribed under this title" should be prescribed in final form. Dodd-Frank, Pub. L. No. 111-203, § 1400(c), 124 Stat. 1376, 2136 (2010). (emphasis added).[3] The regulations must be prescribed in "final form before the end of the 18 month period" starting on the transfer date, or January 22, 2013. Id. Once prescribed in final form, the regulations must be effective no later than 12 months after they are prescribed. Id.

The second subsection provides that the effective date of a section of the Act will be "the date on which the final regulations implementing such section . . . take effect." Id. The plain

---

[3] While (c)(1), (c)(2) and (c)(3) of Section 1400 are technically sub-subsections, Plaintiff will refer to them as "subsections" to simplify the discussion, as the other portions of the statute are not referenced.

5

language of subsection (2) refers only to the sections of the Dodd-Frank Act that anticipate implementing regulations. Significantly, subsection (2) begins with the phrase "[e]xcept as provided in paragraph (3)" and therefore helps define which sections Congress intended to include within the scope of subsection (3). Id. The effective date in subsection (3) covers the same class of sections in Title XIV covered by subsection (2), which as stated above, applies to the sections of Title XIV that require implementing regulations. If subsection (3) was entirely unrelated and independent from subsection (2), the language of "except as provided in paragraph (3)" would also be superfluous. The phrase must be given effect and not disregarded. U.S. v. Menasche, 348 U.S. 528, 538-39 (1955)

Subsection (c)(3) provides that a section will be effective no later than 18 months after the transfer date if the agency fails to issue regulations within the time permitted. Subsection (c)(3) provides the delayed effective date of January 22, 2013 for "sections of this title for which regulations have not been issued." Id. The delayed effective date of "18 months after the designated transfer date," or January 22, 2013, in (c)(3) mirrors the timeline for dates in (c)(1) in which regulations "shall be prescribed" before the "end of the 18-month period beginning on the designated transfer date." The language contemplates that if a section requires implementing regulations to be issued and the regulations are not prescribed in final form before January 22, 2013, the effective date for that section of the Dodd-Frank Act will take effect no later than January 22, 2013.

An interpretation that Section 1400(c)(3) is the effective date for all sections of Title XIV is incongruous with the entirety of Title XIV and overlooks the distinctions between sections in Title XIV. Many sections in Title XIV of the Dodd-Frank Act state that the "board shall prescribe regulations." See e.g., Dodd-Frank, Pub. L. No. 111-203, § 1403, 124 Stat. 1376, 2140 (2010). A non-exhaustive list includes Sections 1403, 1405, 1411, 1412, 1442, 1463, 1471, 1472, 1473, 1483

and each Section contains language directing the agency or agencies to issue regulations or rules. Dodd-Frank, Pub. L. No. 111-203, 124 Stat. 1376 (2010).  However, Section 1416 amending the TILA civil liability gives no such authority or any requirement for implementing the section through regulations.  It is of a different character from the sections requiring implementing regulations. Section 1400(c) does not apply to Section 1416.  Section 1416 quoted in full states:

> (a) Increase in Amount of Civil Money Penalties for Certain Violations- Section 130(a) of the Truth in Lending Act (15 U.S.C. 1640(a)) is amended--
>     (1) in paragraph (2)(A)(ii)--
>         (A) by striking `$100' and inserting `$200'; and
>         (B) by striking `$1,000' and inserting `$2,000';
>     (2) in paragraph (2)(B), by striking `$500,000' and inserting `$1,000,000'; and
>     (3) in paragraph (4), by inserting `, paragraph (1) or (2) of section 129B(c), or section 129C(a)' after `section 129'.
> (b) Statute of Limitations Extended for Section 129 Violations- Section 130(e) of the Truth in Lending Act (15 U.S.C. 1640(e)) is amended--
>     (1) in the first sentence, by striking `Any action' and inserting `Except as provided in the subsequent sentence, any action'; and
>     (2) by inserting after the first sentence the following new sentence: `Any action under this section with respect to any violation of section 129, 129B, or 129C may be brought in any United States district court, or in any other court of competent jurisdiction, before the end of the 3-year period beginning on the date of the occurrence of the violation.

Dodd-Frank, Pub. L. No. 111-203, § 1416, 124 Stat. 1376, 2153 (2010).

The object and purpose of a statute should also be considered when interpreting a statute. See Bhd. of Locomotive Engineers v. Atchison, T. & S.F. R.R., 516 U.S. 152, 157-58 (1996) (the purpose of the act of promoting safety informed the court's analysis of a statutory phrase).  The purpose of the Act is:  "To promote the financial stability of the United States by improving accountability and transparency in the financial system . . . to protect consumers from abusive financial services practices, and for other purposes."  H.R. 4173, 111th Cong. (2010), *available at* http://www.gpo.gov/fdsys/pkg/BILLS-111hr4173enr/pdf/BILLS-111hr4173enr.pdf.  The statute must be interpreted with the purpose in mind.  Specifically, the protection of consumers from abusive financial practices was enhanced because of the increased penalties under the TILA for those who violate the law. A delay in the effective date of the TILA civil liability would serve no

legitimate purpose and the delay of two and a half years from enactment would hinder, rather than enhance, the protection of consumers and be inconsistent with the purpose of the Dodd-Frank Act.

In various parts of the Dodd-Frank Act, Congress demonstrated that it knew how to make plain a broadly applicable effective date that is independent of regulations to be prescribed. For example, in Section 351, Congress stated simply that "the amendments made by this subtitle shall take effect on the transfer date." Dodd-Frank, Pub. L. No. 111-203, § 351, 124 Stat. 1376, 1546 (2010). Section 1029A also clearly stated that the "subtitle shall become effective on the designated transfer date" except that certain sections "become effective on the date of enactment of this Act." Dodd-Frank, Pub. L. No. 111-203, § 1029A, 124 Stat. 1376, 2004 (2010). Congress elsewhere provided for effective dates clearly and expressly without reliance on regulatory timelines and did not do so in Section 1400 of the Act, which supports the conclusion that Congress did not intend for the effective date in Section 1400(c) to apply to the entirety of Title XIV. See FCC v. Next Wave Pers. Communications, Inc., 537 U.S. 293, 302 (2003) (finding Congress knew how to create an exception to the bankruptcy requirements, but did not do so in the statute at issue so no exception was found). Had Congress desired that the effective date of Section 1400(c)(3) apply to all sections of Title XIV, it would have used the clear language similar to the language employed in Section 351 and Section 1029A.

1. The Truncated Analysis in Two Florida Decisions Reached the Wrong Conclusion about the Plain Meaning of the Delayed Effective Date

Two unpublished U.S. District Court decisions in Florida have considered the language of Section 1400(c) in the context of the Dodd-Frank Act's amendments to the Real Estate Settlement and Procedure Act ("RESPA"). See Patton v. Ocwen Loan Servicing, LLC, et. al., 6:11-cv-445, 2011 U.S. Dist. LEXIS 82789 (M.D. Fla. July 28, 2011); Williams v. Wells Fargo Bank, NA, et. al., No. 11-21233, 2011 U.S. Dist. LEXIS 105513 (S.D. Fla. Sept. 19, 2011). The two decisions are not binding or precedential, but provide another context in which to analyze Congress' intent as expressed in

Section 1400(c)(3). The Fourth Circuit has recently stated that an unpublished opinion is not binding precedent. Pressley v. Tupperware Long Term Disability Plan, 553 F.3d 334, 338 (4th Cir. 2009). The Fourth Circuit has also made clear that it is not bound by the decisions of the courts of other circuits. In re Lowe, 102 F.3d 731, 735 (4th Cir. 1996). It is against this legal backdrop that the decisions of the Florida district courts are addressed.

The court in Patton did not engage in any analysis of the language of the Section 1400(c), but made the conclusory statement that it found "no authority that the Dodd-Frank Act amendments to RESPA . . . have taken effect." Patton, 2011 U.S. Dist. LEXIS 82789, at *11, *13.[4] The Patton court made the threshold error of requiring additional authority that the amendments took effect July 22, 2010. Id. The language of the Dodd-Frank Act in Section 4 states clearly the effective date is July 22, 2010 and that any other date must be "specifically provided" elsewhere in the act. Dodd-Frank, Pub. L. No. 111-203, § 4, 124 Stat. 1376, 1390 (2010). The court instead should have required authority to apply the delayed effective date of January 22, 2013 found in Section 1400(c). In addition, the Patton conclusion to apply the delayed effective date was *obiter dictum* because the Defendant's allegedly unlawful conduct occurred on July 21, 2010, one day before the earliest possible effective date of the Dodd-Frank Act. Patton, 2011 U.S. Dist. LEXIS 82789, at *11, *13 n.7 (finding no basis to apply the Dodd-Frank Act amendments retroactively).

The Florida court in Williams v. Wells Fargo Bank, N.A., incorrectly concluded that the delayed effective date in 1400(c)(3) applied to all sections of Title XIV. Williams, 2011 U.S. Dist. LEXIS 105513, *18. The plaintiff in that case argued that an amendment to RESPA found in Section 1463 of the Dodd-Frank Act became effective July 22, 2010. Williams, 2011 U.S. Dist. LEXIS 105513, *14. The court based its contrary conclusion primarily on its analysis of the title to

---

[4] A U.S. District Court in Georgia cited the Patton decision to conclude without analysis that the RESPA amendment in Section 1463(c) of the Dodd-Frank Act was not yet effective. Jones v. Vericrest Financial, Inc., No. 1:11-CV-2330, 2011 U.S. Dist. LEXIS 151458, at *14 n.5 (N.D. Ga. Dec. 7, 2011) (finding a section of Title XIV of Dodd-Frank Act was not yet effective, but noting the issue was not contested by the parties).

Case 6:11-cv-00012-NKM   Document 9-3   Filed 03/13/12   Page 10 of 15   Pageid#: 41

Section 1400(c) that reads: "Regulations; Effective Date." <u>Williams</u>, 2011 U.S. Dist. LEXIS 105513, *16-*17.

The court parsed the punctuation of the title and grammatical rules to conclude that "Regulations" and "Effective Date" are separate thoughts and one does not modify or have a connection to the other. <u>Id</u>. However, once reaching this conclusion the court failed to engage in meaningful interpretation of the text of Section 1400(c). The <u>Williams</u> court placed unjustified weight on the punctuation in the title to Section 1400(c) to conclude that subsection (3) applies to all sections in Title XIV. The U.S. Supreme Court stated that a "purported plain meaning analysis based only on punctuation is necessarily incomplete and runs the risk of distorting a statute's true meaning." <u>U.S. Nat'l Bank of Oregon v. Independent Ins. Agents of Am.</u>, 508 U.S. 439, 454 (1993). The <u>Williams</u> decision indeed distorted the statute's true meaning.

The title of a statute is of limited usefulness in determining the meaning of a statute. The U.S. Supreme Court has held that a title or heading is not meant to take the place of the detailed provisions of the text. <u>Bhd. of Railroad Trainmen v. Baltimore & Ohio R.R.</u>, 331 U.S. 519, 528-29 (1947). The Court further concluded that a "heading is but a short-hand reference to the general subject matter involved" and "for interpretative purposes, they are of use only when they shed light on some ambiguous word or phrase." <u>Id</u>. A title "cannot limit the plain meaning of the text" and the "title alone is not controlling." <u>Denmore v. Kim</u>, 538 U.S. 510, 535 (2003) (internal citations omitted).

The court in <u>Williams</u> treated the title as controlling of the interpretation at the expense of the plain language of Section 1400(c), precisely what the U.S. Supreme Court cautioned against. In the brief discussion of the text of the statute, the court made broad statements that are not reflected in the text. The court stated that subsections (2) and (3) of Section 1400(c) "discuss the effective date of <u>any</u> section or provision contained in Title XIV." <u>Williams</u>, 2011 U.S. Dist. LEXIS 105513,

at *18 (emphasis added). The effective date in the text of Section 1400(c)(2) does not apply to "any" section in Title XIV but only to the subset of sections that have "final regulations implementing such section." Dodd-Frank, Pub. L. No. 111-203, § 1400(c), 124 Stat. 1376, 2136 (2010).

The Court also failed to take into account the interdependence of the subsections within Section 1400(c). Its analysis treated (c)(3) as isolated from the other portions of the Section. The language of (c)(2) makes clear that (c)(3) is tied to the sections before it when it states "except as provided in paragraph (3)." The subsections work in tandem, with subsection (3) setting out the latest effective date in the event that required implementing regulations are delayed. The plain meaning indicates that the effective date of July 22, 2010 applies to the TILA amendment and Section 1400(c) does not apply to Section 1416.

2.  Other Federal Courts Have Concluded that the July 22, 2010 Effective Date Applied to Sections within Title XIV

Several courts have reached a conclusion different from the Florida courts, albeit with limited analysis. A bankruptcy court addressed an amended definition found in Section 1484 of Title XIV of the Dodd-Frank Act. Southland Home Mortgage, LLC v. Valle, No. 10-15196-LT7, 2011 Bankr. LEXIS 679, at *10 (Bankr. S.D. Cal. Feb. 16, 2011). Section 1484 clarified an ambiguity in the Protecting Tenants at Foreclosure Act ("PTFA"). Without significant discussion, the bankruptcy court concluded that the amendment to the PTFA took place upon enactment, or July 22, 2010. Id. Section 1484 is a simple and straight-forward addition of language to the PTFA and like the TILA civil liability amendment, there is no provision for implementing regulations in Section 1484. Dodd-Frank, Pub. L. No. 111-203, § 1484, 124 Stat. 1376, 2204 (2010). No regulation or rulemaking was required, anticipated or necessary to implement the PTFA amendment.

The U.S. District Court for the Western District of Washington also issued a series of decisions in which it simply concluded that the primary effective date of July 22, 2010 applied to a RESPA amendment in Section 1463 of Title XIV of the Dodd-Frank Act. See Amini v. Bank of

Am. Corp., No. C11-0974RSL, 2012 U.S. Dist. LEXIS 14830, at *8 n.5 (W.D. Wash. Feb. 7, 2012); Moore v. Fannie Mae, No. C11-1342RSL, 2012 U.S. Dist. LEXIS 16027, at *12 n.5 (W.D. Wash. Feb. 9, 2012); McDonald v. OneWest Bank FSB, No. C10-1952RSL, 2012 U.S. Dist. LEXIS 21449, at *7 n.4 (W.D. Wash. Feb. 21, 2012).

### B.  If the Statutory Language is Ambiguous, the Canons of Statutory Construction Direct the Conclusion that the Effective Date is July 22, 2010

If the Court determines that a statute is ambiguous, it may then utilize the canons of statutory construction. Stiltner v. Beretta U.S.A. Corp., 74 F.3d 1473, 1482 (4th Cir. 1996). The principle of *in pari materia* is a well-established rule of statutory interpretation. See U.S. v. Stewart, 311 U.S. 60, 64 (1940). The U.S. Court of Appeals for the Fourth Circuit has explained that "adjacent statutory subsections that refer to the same subject matter should be read harmoniously." U.S. v. Boncheau, 645 F.3d 676, 685 (4th Cir. 2011) (internal citations omitted). The U.S. Supreme Court has held that a word or phrase depends on the whole statutory text and that a definition of a word in isolation is not necessarily controlling. Dolan v. Postal Service, 546 U.S. 481, 486 (2006). The Court has also held that the statute is to be read as a whole and "words are not pebbles in alien juxtaposition, they have only a communal existence." King v. St. Vincent's Hospital, 502 U.S. 215, 221 (1991) (internal citations omitted).

The "communal existence" of the language in Section 1400(c), supports the conclusion that the effective date of the TILA amendment is July 22, 2010. The operative provision requiring interpretation is: "A section of this title for which regulations have not been issued" takes effect 18 months after the transfer date or January 22, 2013. Dodd-Frank, Pub. L. No. 111-203, § 1400(c), 124 Stat. 1376, 2136 (2010). Certainly if the phrase is isolated without reference to or consideration of the context, the meaning may appear to apply to the full range of sections in Title XIV when no

regulations are issued or even anticipated.[5] The U.S. Supreme Court has explained that "[a] term appearing in several places in a statutory text is generally read the same way each time it appears." Ratzlaf v. United States, 510 U.S. 135, 143 (1994). The uses of the word "regulations" throughout Section 1400(c) indicate a limited applicability of the word.

Section 1400(c)(1) provides the first modification of the term "regulations" when Congress added the phrase "required to be prescribed under this title." Dodd-Frank, Pub. L. No. 111-203, § 1400(c), 124 Stat. 1376, 2136 (2010). Subsection (c)(1) proceeds to describe the procedure and time frame for issuing the required regulations. Id. Subsection (c)(2) provides further support to the limit on the meaning of the term "regulations" by providing an effective date that takes effect when the "final regulations implementing such section . . . take effect." Id. As discussed above, Congress explicitly connected subsection (c)(2) and (c)(3) with the language "except as provided in paragraph (3)." Id. The connection indicates that Congress intended subsection (c)(3) to apply only to the sections for which regulations were necessary to implement "such section." Id.

The ultimate effective date of 18 months after the transfer date in Section 1400(c)(3) makes sense only in the context of subsections (c)(1) and (c)(2). The effective date is not used in a vacuum, but envisions application within the scheme and framework of Section 1400(c). Congress made the conscious decision to set an effective date should the agency fail to follow the requirement in (c)(1)(A) that the regulations be prescribed "in final form" before the "18-month period beginning on the designated transfer date." Id. The three subsections, interpreted collectively, make the conclusion plain that the delayed effective date applies to those sections requiring regulations for implementation. Any other distinct meaning for "regulations" would thwart the intent of Congress and unnecessarily hinder the proper enforcement of the law. A reading of Section 1400(c) that

---

[5] The Florida U.S. District Courts read the language in isolation and failed to appreciate the limits on the scope of Section 1400(c)(3) made clear in the other subsections.

applies the delayed effective date to all sections of Title XIV does violence to Congress' intended meaning of Section 1400(c) read as a whole.

### C. The Amendment to TILA Civil Liability Leaves no Room for Agency Discretion or Interpretation

Regulations provide the means for the agency to apply its discretion and interpret ambiguities in the statute. The understanding of the regulations and the agency's role further support the conclusion that no regulation or rule was needed or required to interpret the increase in civil liability and a delayed effective date would be senseless. The U.S. Supreme Court stated that the delegation of authority to an agency is for the interpretation of statutes and that an ambiguity left by Congress may be resolved by the agency by the "degree of discretion the ambiguity allows." Nat'l Cable and Telecommunications Assn. v. Brand X Internet Services, 545 U.S. 967, 982 (2005). Once Congress has directly spoken to a question and its intent is clear, it must be followed by the courts and the agency. Chevron U.S.A., Inc. v. Nat'l Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984). "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." Id. at 843 n.9 (internal citations omitted).

The text of the TILA amendment in Section 1416 strikes the previous "$1000" and replaces it with "$2000." No agency interpretation is expected nor would an agency interpretation be appropriate. The agency does not possess the authority to apply its discretion and decide that the increased statutory damages are wrong or for some reason inapplicable. The amount is fixed and must be followed. There is no delegation to the agency for interpretation of the increase in civil liability. The TILA amendment is succinct, precise and leaves no ambiguity for agency interpretation or discretion. The increase in civil liability does not come within the delayed effective date, as provided in Section 1400(c).

The current version of Regulation Z does not even recite the amount of civil liability available for a TILA violation. The only reference to liability is found in 12 C.F.R. § 226.1(e) that simply lists the sections of the statute, including section 130, that "contain provisions relating to liability for failure to comply with the requirements of the act and the regulation." 12 C.F.R. (Reg. Z) § 226.1(e) (2012). The agency, through the current version of Regulation Z, has acknowledged, at least implicitly, that there is nothing to implement or interpret regarding the amount of civil liability. A delay in the effective date for the TILA civil liability amendment would be purposeless.

## CONCLUSION

Congress intended that the amendments to TILA civil liability apply upon enactment of the Dodd-Frank Act and that the increase in statutory damages from $1000 to $2000 take effect July 22, 2010. Therefore, Mr. Hummel prays that this Court award default judgment for the TILA violation in the amount of $2000 and the other relief sought in the Motion.

               Respectfully submitted,
               MICHAEL HUMMEL
               By Counsel

  /s/ Jeremy P. White
Jeremy P. White, Esquire
Virginia Legal Aid Society, Inc.
PO Box 6200
513 Church Street
Lynchburg, VA 24505
Phone: 434.846.1326
Fax:  434.846.3826
SBN:  48917
Counsel for the Plaintiff

## Certificate of Mailing

I hereby certify that a true copy of the foregoing was mailed this 13th day of March, 2012 by first class and certified mail to David Hall, 3203 Suburban Road, Lynchburg, VA 24501

                /s/ Jeremy P. White
                Jeremy P. White, Esq.